## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

LAWRENCE G.M. O'BRIEN,  :
  :
  Plaintiff  :  No. 3:12-CV-00748
  :
  vs.  :  (Judge Nealon)
  :
CAROLYN W. COLVIN,[1]  :
Acting Commissioner of Social Security,  :
  :
  Defendant  :

**FILED**
**SCRANTON**
!JUN 1 3 2014

PER _____
    DEPUTY CLERK

### MEMORANDUM

### BACKGROUND

The above-captioned action is one seeking review of a decision of the

Commissioner of Social Security ("Commissioner") denying Plaintiff Lawrence

G.M. O'Brien's claim for social security disability insurance benefits and

supplemental security income.  (Doc. 1).

O'Brien filed an Application for Social Security Disability Insurance

Benefits and an Application for Supplemental Security Income on October 23,

---

1. Carolyn W. Colvin became the Acting Commissioner of Social Security on
February 14, 2013, and is substituted for Michael J. Astrue as the Defendant in
this case pursuant to Federal Rule of Civil Procedure 25(d).

2007, alleging disability beginning on June 8, 2007.[2] Tr. 260-266.[3] On March 20, 2008, both applications were initially disapproved by the Bureau of Disability Determination[4] on March 20, 2008. Tr. 184-192. On April 4, 2008, O'Brien requested a hearing before an administrative law judge. Tr. 195-198. A hearing was held before administrative law judge, Sridhar Boinin, on May 27, 2009. Tr. 101-163. On June 10, 2009, the administrative law judge ("ALJ") issued a decision that O'Brien was not disabled. Tr. 168-178. Upon request from O'Brien made August 17, 2009, however, the Appeals Council, on January 23, 2010, remanded the matter to the ALJ for resolution of specific issues. Tr. 180-183. Specifically, the ALJ was to: (1) consider the functional impact of O'Brien's obesity; (2) determine how often O'Brien will need to change between sitting and standing; (3) adequately evaluate the treating source opinion of Dr. Saxon; and (4) clarify the date last insured. Tr. 181-182.

---

2. The onset date was amended to April 1, 2008. (Doc. 1, ¶ 5) (Doc. 11, p. 1); see also Tr. 25 & 43.

3. References to "Tr._" are to pages of the administrative record filed by the Defendant as part of the Answer on June 8, 2011. (Doc. 9).

4. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration. Tr. 184 & 188.

A second hearing was held before ALJ, Sridhar Boini, on September 8, 2010. Tr. 39-81.  On September 29, 2010, the ALJ issued a decision denying O'Brien's application.  Tr. 22-34.  On October 29, 2010, O'Brien filed a request for review which was denied by the Appeals Council on February 17, 2012.  Tr. 1-3 & 20-21.  Thus, the ALJ's decision stood as the final decision of the Commissioner.

O'Brien then filed a complaint in this Court on April 20, 2012.  (Doc. 1). On June 27, 2012, Defendant filed an answer and transcript of the entire record of proceedings.  (Docs. 7 & 8).  Supporting and opposing briefs were submitted and the appeal[5] became ripe for disposition on December 4, 2012.  (Docs. 11, 14-15).

O'Brien is a thirty-five (35) year old male, born on April 29, 1979[6], whose education level is approximately thirteen (13) years of education (completion of approximately one year of college).  Tr. 46-47, 67.  O'Brien has never been able to hold a job for very long.  TR. 64-65.  Following high school, O'Brien worked at

---

5. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

6. At the time of the second administrative hearing and the administrative law judge's decision under appeal, O'Brien was thirty-one (31) years of age.  Tr. 46. O'Brien is considered a "younger person (under age 50)" whose age will not seriously affect his ability to adjust to other work.  20 C.F.R. § 404.1563(c).

Herr's Potato Chips for approximately three (3) years. Tr. 65. O'Brien has past

relevant work experience[7] as a warehouse worker (medium duty, unskilled).[8] Tr.

---

7. Past relevant employment in the present case means work performed by O'Brien during the fifteen (15) years prior to the date his claim for disability was adjudicated by the Commissioner. See 20 C.F.R. §§ 404.1560 and 404.1565.

8. The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

4

67.  Records indicate he also worked as a "certified nurses aid" at a "skilled nursing home" at which "[he] provided personal and physical care to ill patients." Tr. 277 & 279.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  O'Brien meets the insured status requirements of the Social Security Act through March 31, 2012. Tr. 27.

O'Brien claims that he suffers from residuals of a left foot injury, obesity, bipolar disorder, attention deficit disorder, and depression which the ALJ found to

---

(c) *Medium work.*  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.

(d) *Heavy work.*  Heavy work involves lifting no more  than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.

20 C.F.R. § 404.1567.

be severe. (Doc. 11, p. 3), citing Tr. 28. O'Brien maintains that the ALJ's finding, that he remained able to perform other work in the national economy based on his residual functional capacity, did not include the limitations assessed by his own consultative psychologist whose opinion was corroborated by the treating psychiatrist. (Doc. 11, p. 3), citing Tr. 385-86 & 506-09.

For the reasons set forth below, the decision of the Commissioner denying O'Brien's application for disability insurance benefits will be reversed and the matter will be remanded to the Commissioner.

## STANDARD OF REVIEW AND SEQUENTIAL EVALUATION PROCESS

Under 42 U.S.C. § 405(g) and relevant case law, the court is limited to reviewing the administrative record to determine whether the decision of the Commissioner is supported by substantial evidence. Counsel for the parties are familiar with the five-step sequential evaluation process that the Commissioner utilizes and the substantial evidence standard of review.[9]

---

9. Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). In an adequately developed factual record, substantial evidence may be "something less

## MEDICAL RECORDS AND OTHER EVIDENCE[10]

On October 3, 2007, O'Brien treated at Community Counseling Services of

Northeastern Pennsylvania ("CCS") and complained of a short attention span

irritability, and explosivity.  Tr. 536-37.  On November 1, 2007 he also

complained of a explosive personality.  Tr. 534.  On December 24, 2007, Mark

---

than the weight of the evidence, and the possibility of drawing two inconsistent
conclusions from the evidence does not prevent an administrative agency's finding
from being supported by substantial evidence."  Consolo v. Federal Maritime
Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in
the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into
account whatever in the record fairly detracts from its weight."  Universal Camera
Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).  A single piece of evidence is not
substantial evidence if the Commissioner ignores countervailing evidence or fails
to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058,
1064 (3d Cir. 1993).  The Commissioner must indicate which evidence was
accepted, which evidence was rejected, and the reasons for rejecting certain
evidence.  Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707.  Therefore, a
court reviewing the decision of the Commissioner must scrutinize the record as a
whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v.
Califano, 606 F.2d 403, 407 (3d Cir. 1979).

The Commissioner utilizes a five-step process in evaluating disability
insurance benefits claims.  See 20 C.F.R. § 404.1520; Poulos v. Commissioner of
Social Security, 474 F.3d 88, 91-92 (3d Cir. 2007).  This process requires the
Commissioner to consider, in sequence, whether a claimant (1) is engaging in
substantial gainful activity, (2) has an impairment that is severe or a combination
of impairments that is severe, (3) has an impairment or combination of
impairments that meets or equals the requirements of a listed impairment, (4) has
the residual functional capacity to return to his or her past work and (5) if not,
whether he or she can perform other work in the national economy.  Id.

10. The evidence outlined is germane to O'Brien's psychiatric condition.

7

Puffenberger, M.D. noted O'Brien still complained of explosivity and he was prescribed medication. Tr. 439.

The Medical Source Statement of Toni J. Parmelee, D.O., from February 13, 2008, noted that O'Brien can frequently lift and carry up to 25 pounds and can occasionally lift up to 50 pounds, can stand for less than an hour, has unlimited sitting, and pushing and pulling akin to the noted lifting limitations. Tr. 351. O'Brien complained of mood issues, panic attacks, sleep disturbances, suicidal ideations, racing thoughts or hallucinations and poor concentration with ADD was noted. Tr. 355. O'Brien was taking an antidepressant. Tr. 355.

On February 27, 2008, O'Brien was treated for a dog bite by Mark Puffenberger, M.D. who noted that O'Brien made no complaint of depression, anxiety or anger. Tr. 439.

On March 6, 2008, a psychiatric review was conducted by Carl Sebastianelli, MA, and O'Brien reported trouble completing tasks, concentrating, following written and spoken directions and getting along with others. Tr. 371. Dr. Sebastianelli diagnosed O'Brien with ADHD and Adjustment Disorder with Depressive Mood but noted no psychotic disorders, anxiety related disorders, or personality disorders. Tr. 360-68, 374. Dr. Sebastianelli rated O'Brien's functional limitations as mostly mild with one moderate indication for maintaining

8

concentration. Tr. 369. In a mental residual functional capacity assessment, Dr. Sebastianelli noted no significant limitation in most categories and moderate limitation in some categories. Tr. 372-73. Dr. Sebastianelli noted that O'Brien's ADD and irritability "do not significantly interfere with his mental status, self-care or activities of daily living" and that O'Brien was "able to meet the basic mental demands of competitive work on a sustained basis." Tr. 374.

On April 24, 2008, O'Brien was treated at Community Counseling Services of Northeastern Pennsylvania ("CCS) and diagnosed with "Bi-Polar Disorder, NOS" with a GAF[11] score of 53 by Dr. Solgama. Tr. 387. O'Brien complained of

_____

11. The GAF score, on a scale of 1-100, allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. American Psychiatric Association (2000). Diagnostic and Statistical Manual of Mental Disorders (4th ed., text rev.). Washington, DC: Author. A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. Id. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within that range. Id. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two. Id. Thus, a suicidal patient who is gainfully employed would have a GAF rating below 20. Id. A GAF score of 21-30 represents behavior considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. Id. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school,

depression, mood swings, racing thoughts, anxiety, paranoia, anger management issues, and suicidal thoughts. Tr. 388-92. O'Brien stated a history of taking Tofranil and Ritalin. Tr. 399. O'Brien's mental status examination noted that O'Brien had good appearance, hygiene, rapport and behavior, but was depressed; that his speech, orientation, intellect, thought process and memory were normal but that he was paranoid; and that he had fair insight, judgment, and impulse control. Tr. 401-02. He was prescribed Risperdal and Trazodone and the Tofranil was discontinued.

O'Brien treated at CCS on May 27, 2008, June 23, 2008, June 25, 2008, July 21, 2008, July 32, 2008, August 6, 2008, August 19, 2008. Tr. 424-427.

On April 6, 2009, O'Brien again treated at CCS with Dr. Saxon and was assessed with a GAF score of 53. Tr. 405-06. O'Brien complained of mood swings, depression, irritability, anxiety, anger management issues, and lack of family support and requested a prescription for Seroquel. Tr. 405-06. O'Brien's mental status examination noted that he had good appearance, hygiene, rapport,

_____

family relations, judgment, thinking or mood. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. Id.

mood and behavior; that his speech, orientation, thought process and memory were normal but that his intellect was below average; and that he had fair insight, judgment, and impulse control. Tr. 416-418. He was prescribed Seroquel ER. Tr. 419.

On November 10, 2009, O'Brien treated at CCS with Dr. Solgama and it was noted that he had passive suicidal ideas and his mental status examination noted that O'Brien had good appearance, hygiene, rapport, and behavior but that his mood was irritable; that his speech, orientation, thought process, intellect and memory were normal; and that he had poor insight, but fair judgment, and impulse control. Tr. 484-93.

Progress notes from November 12, 2009 through July 2, 2010 showed normal progress with bipolar disorder. Tr. 494-503.

On August 23, 2010, O'Brien was examined by Dr. Jeffrey Fremont who concluded O'Brien was "not able to manage benefits in his own best interest." Tr. 509. Dr. Fremont diagnosed O'Brien with "bipolar depression by history" and assessed a GAF score of 50. Tr. 508. Dr. Fremont opined that Plaintiff had fair ability to follow work rules; use judgment; maintain attention and concentration; understand, remember, and carry out simple job instructions; and maintain personal appearance. Tr. 509. Dr. Fremont observed, inter alia, that O'Brien's

11

mood was within normal limits, his general appearance was within normal limits, and that O'Brien noted he heard his dead uncle's footsteps while sleeping at his mother's house. Tr. 507. Dr. Fremont further opined that O'Brien had poor ability to: (1) understand, remember, and carry out complex job instructions, as well as detailed, not complex job instructions; (2) behave in an emotionally stable manner; and (3) relate predictably in social situations. Tr. 509. Dr. Fremont believed Plaintiff had no ability to relate to coworkers, deal with the public, interact with supervisors, and deal with work stresses. Tr. 509.

## DISCUSSION

In his September 29, 2010 decision, the ALJ held, and neither party disputes, that O'Brien met the insured status requirements of the Social Security Act and had acquired sufficient quarters of coverage to remain insured through March 31, 2012, and that O'Brien has not engaged in substantial gainful employment since April 1, 2008. Tr. 27. The ALJ found that O'Brien had the following severe impairments: "residuals of left foot injury, obesity, bipolar disorder, attention deficit disorder, and depression." Tr. 28. The ALJ specifically noted that "[t]he impairments have more than a de minimis effect on the claimant's ability to perform basic work activities" and "are 'severe' as defined in SSR 85-

28."[12] Id. However, the ALJ determined that O'Brien's impairment or combination of impairments "do not satisfy the requisite neurological, laboratory, clinical or diagnostic requirements for listing level severity." Id.

In setting his residual functional capacity, the ALJ noted specific physical limitations and held that O'Brien "should not be involved with direct in-person contact with members of the general public on no more than an incidental or occasional basis to the point of primarily precluding customer service type jobs." Tr. 29. With regard to O'Brien's mental impairments, the ALJ considered his "moderate" GAF scores, the treating notes, opinion evidence, his functionality, and his credibility. Tr. 32-33.

Based on his determination of O'Brien's residual functional capacity and the testimony of the vocational expert, the ALJ concluded that O'Brien could not perform the past relevant unskilled, medium exertional level work as a warehouse worker, but that there are jobs that exist in significant numbers in the national

---

12. An impairment is "severe" if it significantly limits an individuals' ability to perform basic work activities. 20 C.F.R. §§ 404.1521 and 416.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521 and 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

economy that O'Brien could perform such as surveillance system monitor, label printer and type-copy examiner. Tr. 33-34. Accordingly, the ALJ determined that O'Brien is not disabled under the Social Security Act. Tr. 34.

In his brief, O'Brien alleges the ALJ erred by: (1) failing to address or explain the weight he assigned to the opinion of the consultative psychologist, Jeffrey Fremont, Ph.D., and in turn, failed to present all of O'Brien's limitations to the vocational expert; and (2) making erroneous credibility determinations regarding O'Brien's testimony and making no credibility determinations regarding the testimony of O'Brien's mother. (Doc. 11, pp. 5-16). Based upon the testimony of the vocational expert, O'Brien maintains that if the August 23, 2010 functional assessment of Dr. Fremont is credited, he would be unable to perform work of any kind and thus be disabled. (Doc. 11, p. 6), citing Tr. 74-75. O'Brien argues that the ALJ provided no reason for his failure to credit Dr. Fremont's assessment and failed to address it altogether. (Doc. 11, p. 8). Based on his failure to credit Dr. Fremont, O'Brien argues, the ALJ erred by not propounding a hypothetical to the vocational expert containing all of O'Brien's credibly established limitations. (Doc. 11, p. 10). O'Brien submits the ALJ erred in his credibility assessment of O'Brien calling the discrepancies noted by the ALJ "very slender reeds" that don't amount to "glaring differences" that affect O'Brien's

credibility. (Doc. 11, p. 13). Lastly, O'Brien argues the ALJ erred by making no credibility finding regarding his mother and failed to consider her testimony which supported Plaintiff's own statements. (Doc. 11, pp. 15-16).

In response, Defendant maintains that the ALJ considered but properly rejected the assessment of Dr. Fremont based upon that assessment being inconsistent with Dr. Fremont's own findings at examination and the treatment notes from CCS including GAF scores which demonstrate the "moderateness" of O'Brien's mental impairment. (Doc. 14, pp. 10-12). Defendant argues that the ALJ is charged with making credibility determinations and "considered all of the evidence, including the objective clinical signs and laboratory findings, medications, opinions of Plaintiff's treating and examining physicians, and Plaintiff's testimony, before concluding that Plaintiff's statements concerning the nature and severity of his symptoms were not fully credible." (Doc. 14, p. 13), citing (Tr. 32). Defendant contends that the ALJ, by adopting his prior decision, adequately analyzed and rejected the testimony of O'Brien's mother. (Doc. 14, p. 13, n.6).

In reply, O'Brien enumerates Dr. Fremont's opinions which were not discussed in the ALJ's decision and argues the ALJ's failure to provide an explanation as to why he rejected the expert opinions was "patent reversible error

under three decades of Third Circuit precedent." (Doc. 15, p. 2). O'Brien submits that Defendant's efforts to supply his own rational for rejection of Dr. Fremont's assessment is unavailing and what is germane is the ALJ's complete failure to address Dr. Fremont's assessment. (Doc. 15, p. 3). O'Brien believes that Defendant did not even attempt to defend the ALJ's specific reasoning for rejecting O'Brien's credibility and that Defendant's attempts to rely on the prior decision for the ALJ's credibility determinations regarding O'Brien's mother is "transparently inaccurate." (Doc. 15, p. 5).

On August 23, 2010, O'Brien was evaluated by Jeffrey Fremont, Ph.D., who concluded O'Brien was "not able to manage benefits in his own best interest." Tr. 509. Dr. Fremont diagnosed O'Brien with "bipolar depression by history" and assessed a GAF score of 50. Tr. 508. Dr. Fremont opined that Plaintiff had fair ability to follow work rules; use judgment; maintain attention and concentration; understand, remember, and carry out simple job instructions; and maintain personal appearance. Tr. 509. Dr. Fremont observed, inter alia, that O'Brien's mood was within normal limits, his general appearance was within normal limits, and that O'Brien noted he heard his dead uncle's footsteps while sleeping at his mother's house. Tr. 507. Dr. Fremont further opined that O'Brien had poor ability to understand, remember, and carry out complex job instructions, as well as

detailed, not complex job instructions; behave in an emotionally stable manner; and relate predictably in social situations. Tr. 509. Dr. Fremont believed Plaintiff had no[13] ability to relate to coworkers, deal with the public, interact with supervisors, and deal with work stresses. Tr. 509.

Utilizing these limitations as assessed by Dr. Freemont, the vocational expert, Josephine Doherty, testified that O'Brien would not be capable of performing any kind of competitive work activity. Tr. 75. Doherty elaborated stating that "Based upon Dr. Fremont's evaluation there would be no competitive employment simply because the employee would be unable to relate to co-workers in any capacity, and even in an independent job which is unskilled an individual would need to have some communication." Tr. 75. The ALJ clarified that "where there was findings of poor capacity, they would be total exclusion of competitive employment individually" which the vocation expert confirmed. Tr. 75.

---

13. Dr. Fremont uses the word "none" in the section of his report with the headline "Making Occupational Adjustments" to describe O'Brien's ability to "[r]elate to coworkers," "[d]eal with the public," "[i]nteract with supervisors," and "[d]eal with work stresses." Tr. 509. Immediately following this section, Dr. Fremont notes "that the response 'none' means poor in those above examples." Tr. 509.

It is clear from the record that Dr. Fremont made specific findings about

O'Brien's total inability[14] to relate to co-workers, the public, and supervisors

based on his mental impairments, and those limitations would have been decisive

to the vocational experts ultimate conclusion.  Tr. 75 & 509.  "A cardinal principle

guiding disability eligibility determinations is that the ALJ accord treating

physicians' reports great weight, especially 'when their opinions reflect expert

judgment based on a continuing observation of the patient's condition over a

prolonged period of time.'"  Grogan v. Comm'r of Soc. Sec., 459 Fed. Appx. 132,

137 (3d Cir. 2012) citing Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)

(quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).  "However, '[t]he

law is clear ... that the opinion of a treating physician does not bind the ALJ on the

issue of functional capacity.'"  Grogan, 459 Fed. Appx. at 137, citing Brown v.

Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011).  "A treating physician's opinion on

the nature and severity of a claimant's impairment is only given controlling weight

when it is 'well-supported by medically acceptable clinical and laboratory

---

14.  The Undersigned questions these conclusions based on the medical records
depiction of a moderate bipolar disorder and based on O'Brien's ability to
effectively communicate with medical personnel, his lawyer and the ALJ,
however, it is left to the ALJ to conduct a more specific analysis and make a
determination on the issue of functional capacity.

18

diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] case record.'" <u>Grogan</u>, 459 Fed. Appx. at 137, <u>citing</u> <u>Fargnoli v. Halter</u>, 247 F.3d 34, 43 (3d Cir. 2001) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)).  An ALJ may determine, after weighing the evidence, that a treating physician's assessment should not be followed.  <u>Townsend v. Sec'y United States Dep't of HHS</u>, 553 Fed. Appx. 166 (3d Cir. 2014), <u>citing</u> <u>Jones v. Sullivan</u>, 954 F.2d 125, 128-29 (3d Cir. 1991).  However, an ALJ must provide "good reasons" for discounting the treating physician's report. <u>Townsend</u>, 533 Fed. Appx at 166, <u>citing</u> 20 C.F.R. § 404.1527(c)(2); <u>see also</u> <u>Punzio v. Astrue</u>, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision.").

Here, the ALJ does summarize the August 23, 2010 report, and does accurately conclude, based on the whole report, that Dr. Fremont considers O'Brien's mental impairment to be moderate.  Tr. 31 & 506-09.  The ALJ sets a residual functional capacity assessment to include the following regarding O'Brien's mental impairments:

> The claimant is further limited to simple unskilled tasks with no more than occasional work setting changes and involving no independent judgment beyond notifying team leaders or supervisors of any issues concerning the workplace.  The claimant should not be involved with direct in-person contact with members of the general public on no

19

> more than incidental or occasional basis to the point of primarily
> precluding costumer service type jobs.  Lastly, the occupations should
> be of moderate production pace.

Tr. 29.  The Undersigned feels that this assessment is not inconsistent with Dr.

Fremont's report as a whole.  However, the ALJ does not specifically address

every conclusion and limitation made by Dr. Fremont, for example, that O'Brien

has no ability to interact with supervisors, coworkers or the public, or deal with

work stresses.  See Tr. 31 & 509.  Further, it was those limitations which were the

gravamen of the vocational expert's determination.  Tr. 75.  Because the ALJ did

not specifically address and give a sound explanation or good reason for rejecting

the limitations assessed by Dr. Fremont, the matter must be remanded for the ALJ

to specifically address the limitations assessed by Dr. Fremont on the final page of

his August 23, 2010 evaluation report.  See Tr. 509.

Although this Court did not reach the second issue raised by O'Brien

regarding the credibility of O'Brien and his mother, the ALJ is advised on remand

to accept or reject O'Brien's claimed limitations and make specific credibility

determinations supported by substantial evidence.  See  20 C.F.R. § 404.1529(b);

see also Social Security Ruling 96-7p, 1996 SSR LEXIS 4.

**CONCLUSION**

The Court's review of the administrative record reveals that the ALJ did not specifically set forth good reasons why he was rejecting specific functional limitations assessed by Dr. Fremont as required by law.  Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be vacated and the case will be remanded to the Commissioner for further proceedings.

An appropriate order will be entered.

Dated: June 13, 2014

_____
United States District Judge

21